IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**ANTHONY MELVIN NEWSOME**                                      **PLAINTIFF**

V.                                                  Civil Action No. 1:17-cv-280-HSO-JCG

**BOBBY FAIRLEY, et al.**                                         **DEFENDANTS**

### REPORT AND RECOMMENDATION

BEFORE THE COURT are two Motions (ECF Nos. 10 & 11) for Temporary Restraining Orders and Preliminary Injunctions filed by Plaintiff Anthony Newsome. Newsome seeks a temporary restraining order and a preliminary injunction requiring the defendants to acknowledge his belief system and ensure he receives religious accommodations (ECF No. 10). He also seeks a temporary restraining order and preliminary injunction requiring the defendants to provide an adequate law library and to locate and produce his civil action complaint (ECF No. 11). Having considered the submissions by the parties, the record, and relevant legal authority, the undersigned United States Magistrate Judge recommends that the Plaintiff's Motions for Temporary Restraining Orders and Preliminary Injunctions be denied.

### I. BACKGROUND

Newsome is a postconviction inmate in the custody of the Mississippi Department of Corrections (MDOC), currently housed at the South Mississippi Correctional Institute (SMCI) in Leakesville, Mississippi. However, this case relates to events that allegedly occurred while Newsome was housed at the George County

Regional Correctional Facility (ECF No. 5). He filed an initial complaint in the Circuit Court of Greene County, Mississippi on August 30, 2017 (ECF No. 1-1). The Defendants removed this case on October 4, 2017 (ECF No. 1), and filed an answer on October 17, 2017 (ECF No. 4). Plaintiff then filed an amended complaint on October 19, 2017 (ECF No. 5). He is seeking declaratory relief and compensatory and punitive damages from the following Defendants: Bobby Fairley, Warden at George County; Terry Rogers, Facility Administrative Assistant and "Inmate Legal Assistant Program Designee" at George County; Eric Richard, Chaplain at George County; Gia McLeod, Inmate Legal Assistance Program (ILAP) Director for the MDOC; and Eugene Wigglesworth, Chaplaincy Department Director for the MDOC (ECF No. 5).

Newsome makes three claims. First, he contends that he was denied religious accommodations in violation of the Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act (RLUIPA). Newsome states that he is a member of the Natsarim Faith,[1] and therefore needed to celebrate Passover with a yeast free diet and participate in an immersion baptism. He contends that these requests were denied and that he was denied religious counseling. Second, Newsome contends that his right to access the courts was denied due to the inadequate law library and the confiscation, misappropriation, or destruction of his legal documents. Finally, he contends that after filing grievances concerning the above events, the defendants transferred him in retaliation (ECF No. 5).

---

[1] Although it is not entirely clear, Newsome's Amended Complaint seems to indicate that Natsarim shares at least some beliefs with Judaism (ECF No. 5).

On December 14, 2017, Newsome filed two Motions for Temporary Restraining Orders and Preliminary Injunctions (ECF Nos. 10 & 11). In his first motion, he states he "entitled to a temporary restraining order requiring the defendants to implement the Natsarim faith group as a legitimate religion . . . [and] grant religious accommodations . . ." (ECF No. 10-1). In his second motion, Newsome contends that he is entitled to another temporary restraining order "requiring the defendants to locate and produce [his] 'civil action complaint' and provide adequate legal law services." (ECF No. 11-1).  Additionally, he seeks an order requiring the Defendants to provide safeguards for retaliatory transfers (ECF No. 11-3).

Although Newsome did not file these two motions until December 14, 2017, he states that he was transferred to Greene County (SMCI) on August 15, 2017 (ECF No. 10-1). His address of record remains SMCI.

## II. DISCUSSION

### A.  Claims Against George County Defendants

Because Newsome has been transferred out of George County, his claim for injunctive relief regarding policies and procedures at George County is now moot. *See Edwards v. Johnson*, 209 F.3d 772, 776 (5th Cir. 2000). Therefore, Newsome is not entitled to a temporary restraining order or a preliminary injunction with respect to his religious claims or his access to courts claim against Fairley, Rogers, or Richard, as they are George County employees.

**B. Remaining Claims**

However, Newsome is also suing two MDOC employees, McLeod and Wigglesworth, and he contends that the "same actions" occur at SMCI. Additionally, it is unclear which Defendant or Defendants he is suing for the retaliatory transfer. Therefore, the undersigned will address these claims in full.

**1. Legal Standard**

Because Newsome is a prisoner pursuing a civil action seeking redress from a government employee, the Prison Litigation Reform Act (PLRA) applies. The PLRA limits the availability of preliminary injunctive relief: such relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

In order to obtain a temporary restraining order or a preliminary injunction, the applicant must show:

> (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) that granting the preliminary injunction will not disserve the public interest.

*Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 195-196 (5th Cir. 2003). "A preliminary injunction is an 'extraordinary and drastic remedy.'" *Munaf v. Geren*, 553 U.S. 674, 689 (2008). Therefore, the movant must convince a court that all four elements are satisfied. If he does not carry this heavy burden, "a preliminary injunction may not issue and, if issued, will be vacated on appeal."

*Enter. Int'l v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (quoting *Clements Wire & Mfg. Co. v. N.L.R.B.*, 589 F.2d 894, 897 (5th Cir. 1979; *Hardin v. Houston Chronicle Publishing Co.*, 572 F.2d 1106, 1107 (5th Cir. 1978)).

### 2. Religious Claim

Newsome first contends that the Defendants have violated his First Amendment right to free exercise of religion and RLUIPA by denying him religious accommodations, particularly a kosher diet,[2] immersion baptism, and religious counseling. Although prisoners retain their right to the free exercise of religion while incarcerated, prison regulations and the actions of officials may encroach upon that right. Whether the encroachment is permissible depends on "whether it is 'reasonably related to legitimate penological interests.'" *Butts v. Martin*, 877 F.3d 571, 584 (5th Cir. 2017) (quoting *Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 607 (5th Cir. 2008)).

Courts must consider four factors in determining the reasonableness of an encroaching action: (1) is there a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;" (2) are there "alternative means of exercising the right that remain open to prison inmates;" (3) what "impact [the] accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources

---

[2] Although his Motion (ECF No. 10) does not indicate, his Complaint (ECF No. 1-1) and Amended Complaint (ECF No. 5) only discuss the need for a special diet, in particular unleavened bread, for Passover.

generally;" and (4) are there "ready alternatives" to the regulation. *Turner v. Safley*, 482 U.S. 78, 89-90 (1987) (internal citations omitted). Ultimately, the central question in evaluating a First Amendment complaint is whether there is a "reasonable relation" between the action and the legitimate interest purportedly justifying it. *Beard v. Banks*, 548 U.S. 521, 533 (2006)

Under RLUIPA, prison officials must "refrain from (1) substantially burdening an inmate's free exercise of his religion unless, when strictly scrutinized, (2) the burden 'is in furtherance of a compelling governmental interest' and 'is the least restrictive means of furthering that compelling interest.'" *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 331 (5th Cir. 2009). "A burden is substantial if 'it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs.' A burden is not substantial if 'it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed.'" *Id.* at 332 (quoting *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004)). The compelling interest standard must be applied with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Baranowski v. Hart*, 486 F. 3d 112, 125 (5th Cir. 2007).

The Fifth Circuit has previously found that under the First Amendment, denying specific religious services for a small segment of the population was

acceptable when an inmate had the opportunity to practice his religion individually. *Id.* at 121-22. Further, because there was a "legitimate government interest in running a simplified prison food service," a prison "need not respond to particularized religious dietary requests to comply with the First Amendment." *Id.* Similarly, in some circumstances, denying a kosher diet does not violate RLUIPA. *Id.* at 125-26. To the extent that Newsome's requests require a religious counselor of his faith, either for the requested baptism or counseling, "the requirement of an outside volunteer d[oes] not place a substantial burden on the plaintiff's religious exercise under RLUIPA." *Id.* at 125 (citing *Adkins*, 393 F.3d at 571). In light of the foregoing, and given the extraordinary nature of preliminary injunctive relief, Newsome is not entitled to a temporary restraining order or a preliminary injunction on his religious claims.

### 3. Access to the Courts Claim

Although prisoners do have a constitutional right of access to the courts, that right does not "encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993). There is no "abstract, freestanding right to a law library or legal assistance." *Patterson v. Harris Cty. Jail*, 358 Fed. App'x 491, 492 (5th Cir. 2009). "The right of access to the court is not unlimited, but 'encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims . . . .'" *United States v. Liedtke*, 107 Fed. App'x 416, 417 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999)). Newsome has not shown that he is

substantially likely to prevail on the merits of this claim. As such, to the extent that Newsome's motions require the defendants to provide him an "Adequate Prison Law Library," (ECF No. 11-3), his motion should be denied.

Additionally, "[t]o establish that he has been denied access to the courts, [a plaintiff] must show actual prejudice in his ability to pursue a legal claim." *Lewis v. Smith*, 107 Fed. App'x 429, 429 (5th Cir. 2004) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). Newsome does not mention specific cases or claims in which the inadequate library or the alleged destruction of his documents has prejudiced his ability to pursue the claim. Therefore, it is impossible to determine if there is actual prejudice, and given the number of documents that Newsome has filed in this case, it does not appear that he has been.

Newsome also contends that the defendants should be required to produce his civil action complaint as they are responsible for the destruction or confiscation of his legal documents. It is unclear if he is seeking the complaint in this case or in some other case. Newsome has not shown a substantial likelihood of success on this claim, because in addition to the failure to demonstrate actual prejudice, deprivation of prisoner property falls under the purview of the *Parratt/Hudson* Doctrine.

"Under the *Parratt/Hudson* doctrine, 'a deprivation of a constitutionally protected property interest caused by a state employee's random unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the State fails to provide an adequate postdeprivation remedy.'" *Allen v. Thomas*, 388 F.3d

147, 149 (5th Cir. 2004). The doctrine applies to both negligent and intentional deprivation of property. *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986) (negligent deprivation); *Hudson v. Palmer*, 468 U.S. 517, 534-35 (1984) (intentional deprivation). The plaintiff has the burden of showing that the state's post-deprivation remedy is inadequate. *Hudson*, 468 U.S. at 535. However, Mississippi's post-deprivation remedies for civil litigants proceeding *in forma pauperis* are considered adequate. *Nickens v. Melton*, 38 F.3d 183, 185 (5th Cir. 1994). Therefore, Newsome is not entitled to a temporary restraining order or preliminary injunction on any aspect of his claim regarding denial of access to the courts.

### 4. Retaliation Claim

Newsome's final claim is that he was retaliated against. Although he asserts that Fairley, Richard, Rogers, and McLeod should all be liable for various retaliatory acts, he does not contend who is responsible for the alleged retaliatory transfer (ECF No. 5). In his proposed order, he proposes that the Defendants be required to provide "safeguards for retaliatory transfers" (ECF No. 11-3). It is unclear what safeguards Newsome desires, and he does not indicate that he is seeking a temporary restraining order or preliminary injunction returning him to George County. However, in either instance, Newsome is not entitled to a temporary restraining order or a preliminary injunction on his claim of a retaliatory transfer.

In order for Newsome to ultimately prevail on his retaliation claim, he must establish "(1) a specific constitutional right, (2) the defendant's intent to retaliate

9

against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (quoting *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). "Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Id.* at 686

However, courts must regard retaliation claims with caution: "[t]he prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)). In order to ultimately prevail on this claim, Newsome must "be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred." *Id.* At this time, Newsome has not done so. Therefore, his Motion for a Temporary Restraining Order and Preliminary Injunction (ECF No. 11) should also be denied with respect to his retaliatory transfer claim.

## RECOMMENDATION

Based on the above analysis, the undersigned recommends that the Plaintiff's Motions for Temporary Restraining Orders and Preliminary Injunctions (ECF Nos. 10 & 11) be denied).

## NOTICE OF RIGHT TO APPEAL/OBJECT

Under Rule 72(a)(3), Local Uniform Civil Rules of the United States District

Courts for the Northern District of Mississippi and the Southern District of Mississippi, after service of a copy of this Report and Recommendation, each party has fourteen (14) days to serve and file with the Clerk any written objections to it. Within seven (7) days of service of objections, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objection. An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects; the District Court need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy is barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion accepted by the District Court to which he did not object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED**, this the 3rd day of August, 2018.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE