## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ANTHONY MELVIN NEWSOME** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:17cv280-HSO-JCG** |
| | § | |
| | § | |
| **BOBBY FAIRLEY,** *et al.* | § | **DEFENDANTS** |

## ORDER OVERRULING PLAINTIFF'S [39], [40] OBJECTIONS; ADOPTING MAGISTRATE JUDGE'S [37] REPORT AND RECOMMENDATION; AND DENYING PLAINTIFF'S [10], [11] MOTIONS FOR TEMPORARY RESTRAINING ORDERS AND PRELIMINARY INJUNCTIONS

BEFORE THE COURT are Plaintiff Anthony Melvin Newsome's Objections [39], [40] to the Report and Recommendation [37] of United States Magistrate Judge John C. Gargiulo, entered in this case on August 3, 2018, regarding Plaintiff's Motions [10], [11] for Temporary Restraining Orders and Preliminary Injunctions. Based upon a review of Plaintiff's Motions [10], [11], related pleadings, the record, and relevant legal authority, the Magistrate Judge recommended that Plaintiff's Motions [10], [11] be denied.   R. & R. [37] at 1, 10.

After thoroughly reviewing Plaintiff's Objections [39], [40], the Magistrate Judge's Report and Recommendation [37], the record, and relevant legal authority, the Court finds that Plaintiff's Objections [39], [40] should be overruled and that the Magistrate Judge's Report and Recommendation [37] should be adopted as the finding of the Court.   Plaintiff's Motions [10], [11] for Temporary Restraining

Orders and Preliminary Injunctions should be denied.

## I.   BACKGROUND

Plaintiff Anthony Melvin Newsome ("Plaintiff" or "Newsome") filed his Complaint [1-1] in the Circuit Court of Greene County, Mississippi, on August 30, 2017.   Since the time he filed his original Complaint [1-1], Plaintiff has been incarcerated with the Mississippi Department of Corrections ("MDOC") at the South Mississippi Correctional Institution ("SMCI") in Leakesville, Mississippi.   *See* Compl. [1-1] at 13.   Plaintiff's claims pertain to conduct that purportedly occurred while Plaintiff was incarcerated at SMCI, and during his earlier incarceration at a different facility, the Greene County Regional Correctional Facility ("GCRCF") located in Lucedale, Mississippi.   Plaintiff states that he was incarcerated at GCRCF from 2015 until he was transferred to SMCI on August 15, 2017.   *See* Pl.'s Decl. [10-1] at 2; Am. Compl. [5] at 5.

The original Complaint [1-1] advanced claims against Defendants Bobby Fairley, Terry Rogers, Eric Richard, Gia McLeod, and Eugene Wigglesworth[1] for alleged violations of:   (1) the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. §§ 1983, 1985, and 1986; (2) the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, *et*

---

[1] According to the Complaint, Fairley was GCRCF's warden, Richard was its chaplain, and Rogers was an administrative assistant at the facility.   Compl. [1-1] at 3; *see also* Am. Compl. [5] at 3-4.   Wigglesworth "was employed as MDOC Chaplaincy Department Director," and McLeod "was employed by MDOC as Inmate Legal Assistant Program (ILAP) Director."   Am. Compl. [5] at 3-4.

*seq.* ("RLUIPA"); (3) the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et*

*seq.* ("RFRA"); and (4) the Rehabilitation Act, 29 U.S.C. § 701, *et seq. Id.* at 1, 3-4.

On October 4, 2017, Defendants Fairley, Rogers, and Richard removed the

case to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C.

§ 1331, *see* Notice of Removal [1] at 1-2, and Defendants McLeod and Wigglesworth

subsequently joined in the removal, *see* Joinder [3] at 1. Plaintiff then filed an

Amended Complaint [5], advancing the same claims against Defendants Fairley,

Rogers, Richard, McLeod, and Wigglesworth. All Defendants have answered the

Amended Complaint [5]. *See* Answers [8], [9].

On December 14, 2017, Plaintiff filed two Motions [10], [11] for Temporary

Restraining Orders and Preliminary Injunctions. In his first Motion [10], "Plaintiff

seeks a Temporary Restraining Order and Preliminary Injunction to ensure that he

receive[s] Religious accommodations and MDOC/state acknowledgement of the

Natsarim Belief." Mot. [10] at 1. Plaintiff specifically requests religious

accommodation for a special diet, the "inherently essential rite[ ]" of immersion or

baptism, and religious counseling. *Id.* In the second Motion [11], Plaintiff seeks

an injunction related to an alleged inadequate prison law library, material,

supplies, and legal assistance, confiscation or destruction of legal documents, and

retaliatory transfer from GCRCF to SMCI purportedly for filing grievances. *See*

Mot. [11] at 1-2. The vast majority of Plaintiff's allegations in his Motions [10],

[11], relate to GCRCF officials and their conduct while Plaintiff was incarcerated at

GCRCF, prior to his transfer to SMCI. Defendants Fairley, Rogers, and Richard argue that Plaintiff's Motions [10], [11] fail because he has not demonstrated a substantial likelihood of success on the merits. *See* Resp. [14] at 2-10.

On August 3, 2018, the Magistrate Judge entered a Report and Recommendation [37]. The Magistrate Judge determined that Plaintiff's claims for injunctive relief regarding policies and procedures at GCRCF were moot, such that he was not entitled to a temporary restraining order or a preliminary injunction with respect to GCRCF employees Defendants Fairley, Rogers, and Richard. R. & R. [37] at 3. As for Plaintiff's claims against MDOC employees McLeod and Wigglesworth, the Magistrate Judge determined that Plaintiff was not entitled to a temporary restraining order or a preliminary injunction on any of his claims because he had not shown a substantial likelihood of success on the merits. *Id.* at 4-10. The Magistrate Judge recommended that Plaintiff's Motions [10], [11] for Temporary Restraining Orders and Preliminary Injunctions be denied. *Id.* at 10.

Plaintiff submitted Objections [39], [40] to the Report and Recommendation [37]. The first set of Objections [39] appears to relate to Plaintiff's claims regarding his allegations of denial of access to courts, retaliation, and insufficiency of the prison law library, and argues that Plaintiff will suffer irreparable harm if his Motion [11] for Temporary Restraining Order and Preliminary Injunction is not granted. *See* Objs. [39] at 2-15. Plaintiff also raises arguments regarding exhaustion and procedural default, *see, e.g., id.* at 4-5, 8, 10-11, 14-15, which are not

at issue at this time.

In the second set of Objections [40], Plaintiff focuses on his religious accommodation claims, *see* Objs. [40] at 1-8, and maintains that he will suffer irreparable injury and that he has satisfied any exhaustion requirements, *id.* at 3. Plaintiff argues that the Court should apply the "'least restrictive means' test, not 'rational relation' standard of review." *Id.* at 5. According to Plaintiff, Defendants have failed to present credible evidence to support their penological goals, such that his Motion [10] for Temporary Restraining Order and Preliminary Injunction should be granted. *Id.* at 7-8.

## II. DISCUSSION

### A. Standard of review

Because Plaintiff has submitted written Objections [39], [40] to the Magistrate Judge's Report and Recommendation [37], the Court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). "Such review means that this Court will examine the entire record and will make an independent assessment of the law." *Lambert v. Denmark,* Civil No. 2:12-cv-74-KS-MTP, 2013 WL 786356, *1 (S.D. Miss. Mar. 1, 2013). In conducting a de novo review, the Court is not "required to reiterate the findings and conclusions of the magistrate judge." *Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993).

B.      Relevant legal authority

        1.      Temporary restraining orders and preliminary injunctions

A temporary restraining order is a mechanism for affording relief for a limited time, when immediate and irreparable injury, loss, or damage will result to the movant before a party can be heard in opposition.   *See Esparza v. Bd. of Trustees*, 182 F.3d 915, 1999 WL 423109, *2 (5th Cir. 1999) (citing Fed. R. Civ. P. 65(b)).   Where the adverse party has received notice, the provisions of Rule 65(b) do not control, and a court has discretion to consider more lasting relief in the form of a preliminary injunction.   *Id.*   Obtaining a temporary restraining order requires that an applicant meet a higher standard than that necessary for a preliminary injunction.   *Id.*   In this case, Defendants have received notice of Plaintiff's Motions [10], [11], such that the Court will consider his requests under the standard for preliminary injunctions.   *See id.*

A preliminary injunction is an "extraordinary remedy," which should only issue if the movant demonstrates the following:   (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest.   *La Union Del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, 608 F.3d 217, 219 (5th Cir. 2010).   The United States Court of Appeals for the Fifth Circuit has cautioned that a plaintiff is not required to prove his

entitlement to summary judgment on his claims in order to show a substantial likelihood of success on the merits. *Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009).

    2.    Requests for prospective and injunctive relief under the Prison Litigation Reform Act

Because Plaintiff is incarcerated and proceeding *in forma pauperis* in this case, the provisions of the Prison Litigation Reform Act of 1995 ("PLRA"), 18 U.S.C. § 3626, govern his claims. Of relevance here, the PLRA provides that:

> [p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.
> . . . .
> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. §§ 3626(a)(1)(A), (a)(2). Paragraph 1(B) provides that:

> [t]he court shall not order any prospective relief that requires or permits a government official to exceed his or her authority under State or local law or otherwise violates State or local law, unless--
> (i)    Federal law requires such relief to be ordered in violation of State

     or local law;

(ii)  the relief is necessary to correct the violation of a Federal right; and

(iii)  no other relief will correct the violation of the Federal right.

18 U.S.C. § 3626(a)(1)(B).

  3.  <u>RLUIPA claims</u>

In this case, Plaintiff moves for a temporary restraining order and preliminary injunction on his RLUIPA claims.[2] With respect to institutionalized persons, RLUIPA states that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
> (1)  is in furtherance of a compelling governmental interest; and
> (2)  is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "A person may assert a violation [under RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C.A. § 2000cc-2(a).

Under RLUIPA's burden-shifting framework, a plaintiff must first demonstrate that "(1) the relevant religious exercise is 'grounded in a sincerely held religious belief' and (2) the government's action or policy 'substantially burden[s]

---

[2] The Amended Complaint advances RLUIPA and RFRA claims, *see, e.g.,* Am. Compl. [5] at 1-2, but Plaintiff's Motion appears to rely primarily upon alleged RLUIPA violations, *see* Pl.'s Mot. [10] at 2, 4. The result here is the same under either statute, as "RLUIPA 'mirrors RFRA' and allows persons 'to seek religious accommodations pursuant to the same standard as set forth in RFRA.'" *United States v. Comrie*, 842 F.3d 348, 351 n.4 (5th Cir. 2016) (quoting *Holt v. Hobbs*, 135 S. Ct. 853, 860 (2015)).

that exercise' by, for example, forcing the plaintiff 'to engage in conduct that seriously violates [his or her] religious beliefs.'" *Ali v. Stephens*, 822 F.3d 776, 782–83 (5th Cir. 2016) (quoting *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015)).

According to the Fifth Circuit, "a government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir. 2007) (quotation omitted). The Fifth Circuit has cautioned, however, that "our test requires a case-by-case, fact-specific inquiry to determine whether the government action or regulation in question imposes a significant burden on an adherent's religious exercise . . . ." *Id.* (quotation omitted).

If a plaintiff carries this initial burden, the government then must show that its action or policy "(1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that interest." *Ali*, 822 F.3d at 783 (citing 42 U.S.C. § 2000cc-1(a); *Holt*, 135 S. Ct. at 863). In determining whether the government has articulated the existence of a compelling interest, a court does not ask if the challenged policy, in general, furthers a compelling governmental interest in security and costs, but whether "the compelling[-]interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Id.* at 785 (quoting *Holt*, 135 S. Ct. at 863).

The least-restrictive-means test has been described as "exceptionally demanding," as it "requires the government to 'sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y].'" *Id.* at 786 (quoting *Holt*, 135 S. Ct. at 864). The government must demonstrate that a claimant's proposed alternatives are ineffective, not just that it considered those alternatives. *Id.*

4. <u>First Amendment free exercise claims</u>

The First Amendment provides, in part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. "Lawful incarceration inherently involves the limitation of many privileges and rights, but prisoners still benefit from some constitutional protections, including the First Amendment 'directive that no law shall prohibit the free exercise of religion.'" *Butts v. Martin*, 877 F.3d 571, 584 (5th Cir. 2017) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)).

A plaintiff's First Amendment free exercise claim is analyzed under a different framework, separate and independent from the one applicable to claims brought under RLUIPA. *Id.* at 585 (citing *Turner v. Safley*, 482 U.S. 78 (1987)). The Fifth Circuit does not require a preliminary showing that a regulation substantially interferes with an inmate's religious rights before proceeding to assess whether the regulation is reasonably related to a legitimate penological interest. *Id.* at 586. In making that assessment, a court must first determine whether the

defendant's actions were reasonably related to a legitimate penological interest under a deferential standard set forth in *Turner*.  *Id.*

According to *Turner*, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests" because prison administrators, not the courts, must make the difficult, day-to-day judgments concerning institutional operations.  *Turner*, 482 U.S. at 89.  The United States Supreme Court has articulated four factors to consider in evaluating the reasonableness of a regulation:  (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it, such that a regulation cannot be sustained if the logical connection between the two is so remote as to render the policy arbitrary and irrational; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally; and (4) the absence of obvious, ready alternatives.  *Id.* at 89-90.

5.      First Amendment retaliation claims

"A prison official may not retaliate against or harass an inmate for complaining through proper channels about a guard's misconduct."  *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006).  Where an inmate claims that a defendant has retaliated against him for exercising his constitutional rights, a

prisoner plaintiff must establish: (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right; (3) a retaliatory adverse act; and (4) causation. *Id.* "To establish a constitutional violation, an inmate must show that he suffered a qualifying adverse retaliatory act," something more than *de minimis* retaliation. *Id.* at 684-85. "Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Id.* at 686.

According to the Fifth Circuit, a trial court must carefully scrutinize retaliation claims and should treat them with skepticism, or else federal courts may embroil themselves in every disciplinary act that occurs in a state penal institution. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). "To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred." *Id.* In order to prove such a claim, a plaintiff must generally present direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Id.* "An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate." *Id.* at 1165.

6.    Access-to-courts claims

"[P]risoners have a constitutional right of access to the courts," *Bounds v. Smith*, 430 U.S. 817, 821 (1977), and "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law," *id.* at 828.   When an inmate alleges a *Bounds* violation, he or she must show the existence of an actual injury.   *Lewis v. Casey*, 518 U.S. 343, 349 (1996).   The actual-injury requirement "derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Id.*

The Supreme Court has explained that, "[b]ecause *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense."   *Id.* at 351.   In order to prevail, a prisoner must demonstrate that the alleged shortcomings in the prison's library or legal assistance program hindered his efforts to pursue a legal claim in attacking his sentence or in challenging the conditions of his confinement. *Id.* at 351, 355.[3]

---

[3] There are generally two categories denial-of-access-to-courts claims.   *See Christopher v. Harbury*, 536 U.S. 403, 412 (2002).   The first involves forward-looking claims that systematic official action frustrates a plaintiff in preparing and filing suits at the present time, while the second involves backward-looking claims that relate to a time when specific

C.    <u>Analysis of Plaintiff's claims</u>

The Court is mindful that, at this juncture of the proceedings, this case is before it for the limited purpose of considering Plaintiff's requests for temporary restraining orders or preliminary injunctions. Plaintiff's first Motion [10] seeks injunctive relief on his RLUIPA and free exercise claims, while the second Motion [11] relates to his access-to-courts and First Amendment retaliation claims. Both Motions [10], [11] focus almost entirely upon conduct that occurred while Plaintiff was at GCRCF, before he was transferred to SMCI. Plaintiff offers sparse information regarding his claims pertaining to conduct that allegedly occurred since he has been incarcerated at SMCI. For the reasons that follow, the Court agrees with the Magistrate Judge's determination that Plaintiff has not carried his burden of demonstrating a substantial likelihood of success on the merits as to either Motion. The Magistrate Judge's Report and Recommendation should be adopted, and both of Plaintiff's Motions [10], [11] should be denied.

1.    <u>Claims relating to GCRCF</u>

Plaintiff was transferred from GCRCF to SMCI before he filed the present lawsuit. The Magistrate Judge found that, in light of the transfer, Plaintiff's

---

litigation ended poorly. *Id.* at 413-14. Plaintiff refers in passing to both types of claims in his Objections, though it is unclear from his pleadings which type he is actually pursuing here. *See* Pl.'s Objs. [39] at 6. Regardless, in order to assert either type of access-to-courts claim, Plaintiff must show that he suffered an actual injury. *See, e.g., Lewis*, 518 U.S. at 356 (noting that the actual-injury requirement is a constitutional prerequisite and considering whether actual injury existed in backward-looking claims); *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (addressing whether plaintiff demonstrated actual injury in a forward-looking case).

claims for injunctive relief regarding policies and procedures at GCRCF are moot. R.&R. [37] at 3. In support of his Objections [40], "Newsome contends that if he were likely to be returned to GCRCF the case might be 'capable' of repetition but evading review." Ex. "1" [40-1] at 1 (citing *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). Based upon this exception, Plaintiff contends that his claims pertaining to GCRCF are not moot.

The "capable of repetition, yet evading review," exception to the mootness doctrine applies only if a dispute meets the following criteria: "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018). Plaintiff has not shown that either prong of this test is satisfied here. Plaintiff has apparently been incarcerated at SMCI for over a year, and there is no indication that he will be transferred back to GCRCF.

In *Coleman v. Lincoln Par. Det. Ctr.*, 858 F.3d 307 (5th Cir. 2017), the plaintiff had been transferred from one detention center to another, mooting his claims for declaratory and injunctive relief under RLUIPA. *Coleman*, 858 F.3d at 309. The Fifth Circuit found that the possibility of plaintiff's transfer back to the original detention facility was too speculative to warrant relief. *Id.* The Court finds this reasoning applicable here. Plaintiff has not shown that the "capable of repetition, yet evading review," exception to the mootness doctrine applies to his

claims for declaratory or injunctive relief against the GCRCF Defendants. The possibility of Plaintiff being transfer back to GCRCF at some point in the future is too speculative to warrant relief at this time. *See id.*; *see also Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001).

2. Claims relating to SMCI

a. RLUIPA claims

At this early stage of the litigation, Plaintiff has not carried his initial burden of showing that any challenged governmental action at SMCI substantially burdened the exercise of his religious beliefs. Plaintiff claims that he has requested to change his religious affiliation with the MDOC from Christian to Natsarim. *See* Am. Compl. [5] at 8. Plaintiff's request for a preliminary injunction relates specifically to his requests for a certain diet, religious counseling, and baptism or immersion based upon his Natsarim belief or faith. *See* Pl.'s Mot. [10] at 1, 3. The Court will address each request in turn.

(i) Specific diet

Plaintiff claims that he requested from Defendant Richard a kosher diet and unleavened bread and the removal of yeast from his three meal trays during Passover from April 10 through 17, 2017, due to his beliefs. Am. Compl. [5] at 7, 10; *see also* Pl.'s Mot. [10] at 1, 3-4. After the Magistrate Judge entered his Report and Recommendation [37], Plaintiff submitted in his Objections [40] an allegation that Defendant Wigglesworth "stated that Newsome could purchase kosher food

items from the canteen," Pl.'s Objs. [40] at 4, and that "the MDOC still fails to provide non-pork kosher meal[s]," even after he purportedly supplied Defendants Wigglesworth and Richard with a copy of "The Natsarim Faith judicutory," *id.* at 6. Plaintiff complains that, in order to follow a kosher diet, he must adhere to particular rules concerning what foods he may eat, as well as to particular methods that must be followed in preparing his food. *Id.* Specifically, "containers, pots, and pans, utensils, and all other implements used in [kosher food] preparation, must not come into contact with any item that is or has had contact with non-kosher food," and the food must be "served on plates and bowls and eaten with utensils which have not had non-kosher contact." *Id.*

Defendants respond that even if their failure to provide Plaintiff a special diet substantially burdens the exercise of his religion, the burden is imposed "in furtherance of the compelling state interest in maintaining good order and controlling costs, given the substantial expense of providing a separate kitchen or bringing in religiously compliant food from outside the prison . . . ." Defs.' Resp. [14] at 5. According to Defendants, "such treatment would detract from the budget allocations for other inmates' food, which would breed resentment among the inmates and would also increase demand among other religious groups," and would threaten "security, order, and rehabilitation [which] are legitimate penological objectives." *Id.* at 5-6.

There appears to be no dispute that Defendant Richard is employed at

GCRCF, not at SMCI. To the extent Plaintiff raises RLUIPA claims against Richard related to his conduct at GCRCF, as the Court has already explained, Plaintiff's requests for declaratory and injunctive relief related to such allegations are moot in light of his subsequent transfer to SMCI. *See, e.g., Coleman*, 858 F.3d at 309; *Herman*, 238 F.3d at 665. The possibility of Plaintiff's return to GCRCF at some point in the future is too speculative to warrant relief. *See, e.g., Coleman*, 858 F.3d at 309; *Herman*, 238 F.3d at 665.

It does not appear that Plaintiff has raised any specific assertions regarding his dietary requests during his time at SMCI. Plaintiff mentions in his Objections [40] "the recent policy of accommodation regarding Natsarim inmates has been applied," *see* Objs. [40] at 4, though it is not clear to what recent policy Plaintiff is referring and whether it moots his request for injunctive relief as against SMCI. Moreover, the evidence Plaintiff has submitted of communications between him and Defendant Wigglesworth reference GCRCF and predate Plaintiff's transfer to SMCI. *See* Letter [40-1] at 2-3 (stamped received in April 2017); Mem. [40-2] at 2 (dated April 20, 2017); Mem. [40-2] at 4 (dated May 26, 2017). The only communication that Plaintiff has submitted to the Court where he requested kosher meals while at SMCI was apparently directed to SMCI Area-I Warden Georgia Shelby, *see* Mem. [40-3] at 2 (dated December 9, 2017), who was not named as a Defendant in this case.[4] According to a response Memorandum dated January 23, 2018, Shelby

---

[4] It does not appear that Plaintiff has named any SMCI officials as Defendants, and it is unclear what authority anyone who is named as a Defendant in this case would have to

forwarded Plaintiff's request to the "Chaplain Department." *Id.* at 4. It is unclear what happened next. Based upon the record before the Court, Plaintiff has not shown at this juncture that there is a substantial likelihood that he will prevail on his RLUIPA claims as to his specific dietary requests.

    (ii)   <u>Religious counseling</u>

Plaintiff maintains that he has requested religious counseling, but that his requests have been denied. According to his Objections [40], Plaintiff has asked that his religious counseling be conducted by Defendant Richard, rather than by a Natsarim leader. *See* Pl.'s Objs. [40] at 4. Plaintiff has "requested Defendants to coordinate, implement and maintain a Religious program specifically for his Religious preference." *Id.* Defendants counter that the Natsarim faith appears to be "practiced by a very small number of individuals," and that there is no legal authority of which they are aware that mandates them "to provide faith-specific counseling and services for every single faith to which an inmate might adhere," such as a Natsarim-specific counselor. Defs.' Resp. [14] at 7.

Again, it appears that Defendant Richard is employed at GCRCF, not at SMCI, and Plaintiff was transferred from GCRCF to SMCI before his initial Complaint was filed. The vast majority of Plaintiff's allegations relate to GCRCF, and his injunctive claims pertaining to GCRCF are moot.

Plaintiff's Motion contains very little information or allegations pertaining to

---

fashion the relief Plaintiff seeks, to the extent he is requesting such relief from SMCI.

his time at SMCI.   To the extent that some of Plaintiff's claims regarding religious counseling might relate to his time at SMCI, there is no indication from the current record that SMCI keeps individuals on its payroll to serve specific religions, and Plaintiff has not cited any legal authority that would require Defendants to provide prisoners with specific counseling services for every religious preference a prisoner may have.   The record demonstrates that while Plaintiff was at GCRCF, Defendants sought more information about the Natsarim faith and inquired whether there was a minister or others in Plaintiff's faith group with whom the chaplain could communicate concerning Plaintiff's religious needs.   *See, e.g.,* Mem. [40-2] at 2; Mem. [40-2] at 4.   In this vein, the Fifth Circuit has held that the requirement of an outside volunteer and the dearth of such volunteers does not place a substantial burden on a plaintiff's free exercise of his faith within the meaning of RLUIPA.   *Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir. 2007).

Again, Plaintiff's references to his time at SMCI are vague and limited, which is insufficient to carry his burden of showing a substantial likelihood of success on the merits on this RLUIPA claim.

(iii)   <u>Baptism or immersion</u>

Turning to Plaintiff's RLUIPA claims for baptism or immersion, the Amended Complaint [5] asserts that Plaintiff e-mailed Defendant Richard on June 13, 2017, "[r]equesting Immersion [Baptism] in the Natsarim Belief."   Am. Compl. [5] at 25. Plaintiff contends that Richard responded as follows:

> I am glad you are furthering your religious Belief. Please have your religious leader contact me and I will attempt to have him or her approved to perform this Baptism.

*Id.* at 26. Plaintiff claims that he e-mailed Richard on June 14, 2017, stating in relevant part, that "[y]ou are aware that I am unable to provide a Religious leader for immersion. I have requested your assistance in this matter." *Id.* at 27. Later that day, Plaintiff received a statement from Richard indicating that Richard had contacted the Torah Institute in order learn whether that organization could supply a qualified person to perform the rite Plaintiff requested. *Id.* at 29. Plaintiff maintains that after Richard received correspondence from the Torah Institute, which gave an understanding of the Natsarim faith, he was denied his request for immersion. *Id.* at 30. Plaintiff alleges that Richard failed to follow MDOC policy regarding immersion or baptism. *Id.* at 37.

All of these claims relate to Defendant Richard and to Plaintiff's time at GCRCF, which, as the Court has already determined, are moot. Even if Plaintiff were advancing some RLUIPA claims regarding immersion for his time at SMCI, he has not shown that Defendants placed a "substantial burden" on his free exercise of religion based upon his request for "Immersion [Baptism] in the Natsarim Belief." Am. Compl. [5] at 25. Defendants at some point apparently sought an outside volunteer to conduct this religious rite, and the Fifth Circuit has held that the requirement of an outside volunteer does not constitute a substantial burden on a plaintiff's religious exercise under RLUIPA. *See Baranowski*, 486 F.3d at 125.

In sum, most if not all of Plaintiff's claims for injunctive relief under RLUIPA are moot because they are directed at GCRCF, and he has simply not supplied enough detail at this stage of the litigation to demonstrate a substantial likelihood that he will prevail on the merits of his other RLUIPA claims as against SMCI. Plaintiff's request for preliminary injunction related to his RLUIPA claims should be denied.[5]

b.    First Amendment free exercise claims

Plaintiff claims that he was denied the opportunity to practice and/or participate in all religious observances, such as kosher meals, immersion, and "other inherently essential sacramental rites . . . ."    Pl.'s Objs. [40] at 1; *see also* Pl.'s Mot. [10] at 1.    Plaintiff also contends that "Defendants purposefully failed to provide Religious counseling as prescribed in the MDOC policy," thus intentionally interfering with his free exercise of religion.    Pl.'s Mot. [10] at 1.

In considering First Amendment free exercise claims, "[t]he pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith."    *Baranowski*, 486 F.3d at 121 (quotation omitted).    At this time Plaintiff has not shown a substantial likelihood that he will prevail on his claim that Defendants failed to afford him opportunities to exercise

---

[5]  Plaintiff's Objections [40] also mention that "the recent policy of accommodation regarding Natsarim inmates has been applied."    Objs. [40] at 4.    It is unclear from the record whether his claims for injunctive relief related to actions at SMCI may now be moot as well.

his faith or that they have otherwise impinged on his First Amendment right of free exercise of his religion, *see id.*, and he has not demonstrated that Defendants' actions or regulations were unreasonable, *see Turner*, 482 U.S. at 89-90. Plaintiff has not shown that he is substantially likely to prevail on his First Amendment free exercise claims, and his Motion [10] for a preliminary injunction as to these claims should be denied.

c. <u>First Amendment retaliation claims</u>

Plaintiff alleges that Defendants Fairley and Rogers retaliated against him for using the prison grievance system at GCRCF, though it is unclear from his pleadings how they did so. Plaintiff's Motion [11] does aver that he was retaliated against when he was transferred to SMCI, but Plaintiff makes this assertion in a conclusory manner by stating that SMCI is a "known harsh and violent facility, which is currently on 'lock-down status.'" Pl.'s Decl. [11-1] at 4; *see also* Pl.'s Objs. [39] at 13 (alleging that Newsome was transferred from GCRCF to SMCI in retaliation for the number of grievance forms and ARPs he submitted against prison staff). Plaintiff has not specifically identified which Defendant was responsible for the allegedly retaliatory transfer. *See* Pl.'s Decl. [11-1] at 3-4; Pl.'s Objs. [39] at 13. Nor is it clear what injunctive relief Plaintiff seeks in this regard, as he has not asked to be transferred back to GCRCF. Based upon the record before the Court at this time, Plaintiff has not established that he is entitled to preliminary injunctive relief on his retaliation claim.

Moreover, Plaintiff has not shown that his transfer from one facility to another would qualify as an adverse retaliatory act, such that it would deter a person of ordinary firmness from further exercising his or her constitutional rights. *See Morris*, 449 F.3d at 684-85, 686. Even if the transfer constituted a qualifying adverse retaliatory act, Plaintiff has also not demonstrated any Defendant's intent to retaliate against him for exercising his constitutional rights. Temporal proximity alone is insufficient to state a claim for retaliation. *See Gonzalez v. Sarabia*, 720 F. App'x 213, 214 (5th Cir. 2018).

Plaintiff also appears to claim that prison officials confiscated or destroyed certain of his legal documents in retaliation for his complaints and grievances. *See* Pl.'s Mot. [11] at 3. At this point, Plaintiff has not done enough to show requisite retaliatory animus on the part of any Defendant to establish a substantial likelihood of success on the merits of a retaliation claim related to the alleged confiscation or destruction of legal documents. Retaliation based upon this theory cannot be plausibly inferred from the current record.

d. Access-to-courts claims

The Amended Complaint contends that Defendant Rogers confiscated, misappropriated, or destroyed Plaintiff's legal documents. Am. Compl. [5] at 38. Plaintiff further complains that he did not have access to an adequate legal library and that he received insufficient legal assistance, which frustrated or impeded his bringing a non-frivolous claim for violations of his right to free exercise of his

religion.  *Id.*  However, Plaintiff has not identified which specific cases or claims have been prejudiced.

With respect to his Motion [11], Plaintiff alleges that the institutions' law libraries and legal assistance programs are subpar in some ways, but he has not demonstrated that these shortcomings hindered his efforts to pursue a legal claim in attacking his sentence or in challenging the conditions of his confinement.  *See Lewis*, 518 U.S. at 351, 355.  To the extent Plaintiff claims that any official denied him access to the courts related to this particular case, his prolific filings in this Court, supported by numerous citations, belie those claims.  *See, e.g., Fountain v. Thaler,* No. 14-40644, 2015 WL 6445738 (5th Cir. Oct. 26, 2015).  Plaintiff has not shown the existence of actual injury sufficient to support his access-to-courts claims pertaining to the alleged inadequacy of the institutions' law libraries and legal assistance programs or with respect to the alleged confiscation, misappropriation, or destruction of legal documents.  Nor has Plaintiff shown that he suffered an actual injury to the extent he argues that Defendants denied him access to courts by interfering with his exhaustion of state remedies prior to filing suit.

Having conducted the appropriate review, Plaintiff has not shown a substantial likelihood that he will succeed on his access-to-courts claims, and his request for a preliminary injunction as to these claims should be denied.[6]

---

[6] Defendants argued, and the Magistrate Judge found, that Plaintiff's claims for confiscation of his legal documents was subject to the *Parratt/Hudson* doctrine.  *See* R. & R. [37] at 8-9; Defs.' Resp. [14] at 8; *see also Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327

## III.  CONCLUSION

Following a de novo review, Plaintiff's Objections [39], [40] will be overruled, and the Magistrate Judge's Report and Recommendation [37] will be adopted as the finding of the Court.   Plaintiff has not shown that he is entitled to the extraordinary remedy of a temporary restraining order or a preliminary injunction, and his Motions [10], [11] for Temporary Restraining Orders and Preliminary Injunctions will be denied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Plaintiff Anthony Melvin Newsome's Objections [39], [40] to the Report and Recommendation [37] of United States Magistrate Judge John C. Gargiulo are **OVERRULED**, and the Report and Recommendation [37] of United States Magistrate Judge John C. Gargiulo, entered in this case on August 3, 2018, is **ADOPTED** in its entirety as the finding of this Court, subject to the additional findings made herein.

---

(1986).   While it is not completely clear from his pleadings, to the extent Plaintiff is making a due process confiscation of property claim, he has not shown how the *Parratt/Hudson* doctrine does not bar such a claim, as Defendants argue and the Magistrate Judge found.   *See* R. & R. [37] at 8-9; Defs.' Resp. [14] at 8.   When addressing the loss of legal materials, the Fifth Circuit has considered due process claims for confiscation of property separately from retaliation claims and claims for denial of access to courts, and has applied the *Parratt/Hudson* doctrine only to the due process claims.   *See Leggett v. Williams*, 277 F. App'x 498, 500 (5th Cir. 2008); *Cochran v. Baldwin*, 196 F. App'x 256, 257 (5th Cir. 2006).   The Court has therefore considered Plaintiff's access-to-courts and retaliation claims related to the alleged destruction of legal documents separately from any due process claim and finds both the access-to-courts and retaliation claims fail for the reasons stated herein.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Anthony Melvin Newsome's Motions [10], [11] for Temporary Restraining Orders and Preliminary Injunctions are **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 27th day of September, 2018.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE