IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

ANTHONY MELVIN NEWSOME                                      PLAINTIFF

V.                              CIVIL ACTION NO. 1:17-cv-280-HSO-JCG

BOBBY FAIRLY, et al.                                       DEFENDANTS

## REPORT AND RECOMMENDATION

BEFORE THE COURT are the following Motions: a Motion for Summary
Judgment (ECF No. 31) filed by Defendant Gia McLeod and a Motion for Summary
Judgment (ECF No. 33) filed by Defendants Bobby Fairley, Terry Rogers, and Eric
Richard. Both Motions allege that Newsome has not exhausted his available
administrative remedies. Having considered the submissions of the parties, the
record, and relevant legal authority, the Undersigned United States Magistrate
Judge recommends that McLeod's Motion for Summary Judgment (ECF No. 31) be
granted and Fairley, Rogers, and Richard's Motion for Summary Judgment (ECF
No. 33) be granted in part and denied in part. However, the Undersigned also finds
that Newsome's remaining claims are without merit and therefore recommends that
this case be dismissed in its entirety.

## I. BACKGROUND

Newsome is a postconviction inmate in the custody of the Mississippi
Department of Corrections (MDOC), currently housed at the South Mississippi
Correctional Institute (SMCI) in Leakesville, Mississippi. However, most of his
claims relate to events that allegedly occurred while he was housed at the George-

Greene County Regional Correctional Facility (George County) in Lucedale, Mississippi. Plaintiff filed his initial Complaint (ECF No. 1-1) in the Circuit Court of Greene County, Mississippi on August 30, 2017. Defendants Fairley, Rogers, and Richard removed the case to this Court on October 4, 2017 (ECF No. 1), and Defendants McLeod and Eugene Wigelsworth joined in the removal (ECF No. 3). Thereafter, on October 19, 2017, Newsome filed an Amended Complaint (ECF No. 5) against the five Defendants.

Plaintiff seeks damages and injunctive relief from Fairley, the Warden at George County; Rogers, the Facility Administrative Assistant and "Inmate Legal Assistant Program Designee" at George County; Richard, the Chaplain at George County; McLeod, the Inmate Legal Assistance Program (ILAP) Director for MDOC; and Wigelsworth, the Chaplaincy Department Director for MDOC (ECF No. 5). Newsome's claims can be broken down into three categories.

First, he claims he was denied religious accommodations in violation of the First Amendment's Free Exercise Clause, the Religious Land Use and Institutionalized Persons Act (RLUIPA), and the Religious Freedom Restoration Act (RFRA). Newsome states that he is a member of the Natsarim Faith and contends he was denied a yeast free diet during Passover, the right of immersion baptism, and religious counseling. Second, he contends that his right to access the courts was denied due to the inadequate law library and the confiscation, misappropriation or destruction of his legal documents. Finally, Newsome contends that as a result of his attempts to exercise his First Amendment rights and to utilize the prison

grievance system, he was retaliated against. He contends the Defendants removed him from educational and rehabilitative services at George County and then transferred him to SMCI in retaliation (ECF No. 5).

It appears that Newsome is suing Fairley, Richard, and Wigelsworth for the denial of religious accommodations; Rogers and McLeod for the denial of access to the courts; and Fairley, Rogers, Richard and McLeod for retaliation. Currently pending before the Court are two Motions for Summary Judgment based on failure to exhaust administrative remedies. McLeod alleges that Newsome failed to exhaust his administrative remedies with respect to the retaliatory transfer claim. The Motion itself does not address Newsome's other claims for retaliation or his claim for denial of court access (ECF No. 31). However, the attached affidavit of Richard Pennington, the Director of the Administrative Remedy Program for MDOC, states that Newsome did not exhaust any retaliation claims, claims of inadequate legal assistance, or claims related to the confiscation or destruction of documents (ECF No. 31-1). Fairley, Rogers, and Richard allege that Newsome failed to exhaust administrative remedies with respect to all of his claims against them (ECF No. 33).

## II. DISCUSSION

### A. Motions for Summary Judgment Based on Failure to Exhaust Administrative Remedies

#### 1. Legal Standard

Summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the

3

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When evaluating a motion for summary judgment, the Court must construe "all facts and inferences in the light most favorable to the non-moving party." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). If the movant carries this burden, the burden shifts to the non-moving party to show that summary judgment should not be granted. *Id.* at 324. "The non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Abarca v. Metro Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 324). In the absence of any proof, the Court will not assume that the Plaintiff "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Because Newsome is a prisoner pursuing a civil action seeking redress from government employees, the Prison Litigation Reform Act (PLRA) applies and requires that this case be screened. The PLRA provides that "the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B). Accordingly, the statute "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

The PLRA also requires prisoners to exhaust available administrative remedies before filing a lawsuit. 42 U.S.C. § 1997e(a). This exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). A prisoner's failure to exhaust available administrative remedies undermines these purposes.

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

5

*Id.* at 95. Dismissal is mandatory where a prisoner fails to properly exhaust available administrative remedies before filing suit in federal court. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (quoting *Woodford*, 548 U.S. at 85).

    2.  <u>Motions for Summary Judgment (ECF Nos. 31 & 33)</u>

Newsome contends that he exhausted his religious accommodation claim but argues that he was precluded from exhausting his claims involving access to the courts and retaliation. Therefore, he argues he should be excused from his failure to exhaust (ECF Nos. 5 & 30-3). McCleod, in support of her Motion (ECF No. 31) offers the Declaration of Richard Pennington and Newsome's grievance detail reports. Although Newsome wrote a letter to Superintendent James Holman on February 28, 2013, concerning the inadequate law library and legal assistance he received, he does not mention or even impliedly reference McLeod, nor does he mention any retaliatory actions taken against him. Further, his letter was rejected for failure to include "[t]his is a Request for Administrative Remedy." It does not appear that Newsome ever correctly re-filed this grievance (ECF No 31-1). Therefore, Newsome did not exhaust his retaliatory transfer claim against McLeod.

In support of their Motion for Summary Judgment (ECF No. 33), Fairley, Rogers, and Richard offer George County's Grievance Procedure, Fairley's Affidavit, and Newsome's ARP file from George County. Although Newsome made numerous informal requests to Rogers while at George County, his requests all concerned religious accommodations. Newsome did not file any grievances regarding his court access claims or his retaliation claims. However, although it is not entirely clear

from the Defendants' exhibits, it appears that Newsome may have properly pursued one religious accommodation grievance to completion. Although addressed to Wigelsworth, the grievance concerns Richard, and based on Wigelsworth's responses, it appears that Richard was involved in responding. Therefore, construing the evidence in the light most favorable to Newsome, the Defendants' Motion for Summary Judgment (ECF No. 33) must fail with respect to Newsome's religious accommodation claim against Richard. However, Newsome did not properly exhaust any claims concerning Fairley and Rogers, nor did he exhaust his retaliation claim against Richard.

However, Newsome contends that administrative remedies were unavailable to him with respect to his access to the courts and retaliation claims (ECF Nos. 5, 30-3, & 39). An administrative remedy is unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," the scheme is "so opaque that it becomes, practically speaking, incapable of use," or "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016). The last category is at issue here, as Newsome contends that his requests were destroyed by prison officials. However, Newsome provides no information concerning these grievances he allegedly attempted to file, and he was able to submit a letter to Mr. Holman concerning his complaints of inadequate legal aid (ECF No. 31-1). The fact that it was rejected for noncompliance with the procedures has no bearing on Newsome's ability to file a

corrected grievance, particularly when the rejection indicated the needed correction. The facts of this case do not involve circumstances of unavailable administrative remedy procedures.

Therefore, McLeod's Motion for Summary Judgment (ECF No. 31) should be granted and Fairley, Rogers, and Richard's Motion for Summary Judgment (ECF No. 33) should be granted in part and denied in part. However, even if the administrative remedies were unavailable or even if Newsome properly exhausted all of his claims, Newsome would not be entitled to relief, as will be discussed below in the context of his remaining claims. Newsome's remaining claims include his religious accommodation claims against Richard and Wigelsworth, his access to the courts claims against McLeod, and part of his retaliation claim against McLeod.[1] However, pursuant to the Court's authority under the PLRA, the Court finds that Newsome's claims are meritless, and he is not entitled to relief.

## B. Injunctive Relief against the George County Defendants

First, any request for injunctive relief against the George County Defendants is now moot, as Newsome has been transferred out of George County. *See Edwards v. Johnson*, 209 F.3d 772, 776 (5th Cir. 2000). Therefore, Newsome is not entitled to injunctive relief against Richard with respect to Newsome's religious accommodation claim. The same would be true if Newsome had properly exhausted any claims against Fairley or Rogers.

---

[1] McLeod's Motion only referred to Newsome's failure to exhaust his retaliatory transfer claim, but Newsome's Amended Complaint (ECF No. 5) also states that the Defendants' removed him from educational and rehabilitative programs in retaliation for his actions.

### C. Denial of Religious Accommodations

Newsome also seeks monetary damages from Richard on his religious accommodation claims, and he contends that he is entitled to both injunctive relief and monetary damages against Wigelsworth as the "same actions" occur at SMCI. Newsome asserts that he is entitled to relief under the First Amendment, RLUIPA, and RFRA.

1. First Amendment

Newsome first contends that the denial of his requests for a kosher diet, immersion baptism, and religious counseling violated the Free Exercise Clause of the First Amendment. Although prisoners retain their right to the free exercise of religion while incarcerated, prison regulations and the actions of officials may sometimes encroach upon that right. Whether the encroachment is permissible depends on "whether it is 'reasonably related to legitimate penological interests.'" *Butts v. Martin*, 877 F.3d 571, 584 (5th Cir. 2017) (quoting *Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 607 (5th Cir. 2008)).

Courts must consider four factors in determining the reasonableness of an encroaching action: (1) is there a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;" (2) are there "alternative means of exercising the right that remain open to prison inmates;" (3) what "impact [the] accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and (4) are there "ready alternatives" to the regulation. *Turner v. Safley*,

482 U.S. 78, 89-90 (1987) (internal citations omitted). Ultimately, the central question in evaluating a First Amendment complaint is whether there is a "reasonable relation" between the action and the legitimate interest purportedly justifying it. *Beard v. Banks*, 548 U.S. 521, 533 (2006)

Newsome's claim for a kosher diet must fail because there is a "legitimate governmental interest in running a simplified prison food service." *Baranowski v. Hart*, 486 F.3d 112, 122 (5th Cir. 2007) (citing *Kahey v. Jones*, 836 F.2d 948, 950 (5th Cir. 1988)). Prisons "need not respond to particularized religious dietary requests to comply with the First Amendment." *Id.* Further, with respect to Newsome's request for baptism and counseling, denying specific religious services for a small segment of the population is not unconstitutional when an inmate can practice his religion individually. *Id.* at 121-22. It is clear from the record that Wigelsworth and Richard attempted to obtain more information on Natsarim from Newsome as well as from the Torah Institute. The lack of available information on Newsome's faith is not sufficient to show that the Defendants prevented Newsome from exercising his right to practice his religion.

The Defendants asked Newsome to provide the name of a religious leader to conduct the requested baptism and provide more information concerning the religion. However, Newsome states that he has not requested a Natsarim leader but he instead expects the Defendants "to coordinate, implement, and maintain a religious program specifically for his religious preference" (ECF No. 40). The Defendants argue that they are not required to provide such faith specific

counseling. As the Defendants do not have a practice of retaining faith specific counselors for every religion, their refusal to provide Natsarim specific counseling and instead request an outside volunteer does not violate Newsome's First Amendment rights. Such a practice is rationally related to a legitimate government interest of maintaining control and reducing expenditures and leaves open the alternative of outside volunteers and individual worship. *See id.*; *Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004)). Therefore, Newsome has not asserted a viable First Amendment claim against any Defendant.

### 2. RLUIPA & RFRA

RFRA "has been declared unconstitutional as applied to the states," but RLUIPA has taken its place and "applies a very similar test." *Thompson v. Scott*, 86 Fed. App'x 17, 18 (5th Cir. 2004) (citing *City of Boerne v. Flores*, 521 U.S. 507, 536 (1997)). Under RLUIPA, prison officials must "refrain from (1) substantially burdening an inmate's free exercise of his religion unless, when strictly scrutinized, (2) the burden 'is in furtherance of a compelling governmental interest' and 'is the least restrictive means of furthering that compelling interest.'" *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 331 (5th Cir. 2009) (quoting 42 U.S.C. § 2000cc-1). "A burden is substantial if 'it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs.' A burden is not substantial if 'it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed.'" *Id.* at 332 (quoting *Adkins*, 393 F.3d at 570). The compelling

11

interest standard must be applied with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Baranowski*, 486 F.3d at 125 (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005)). RLUIPA "is not meant to elevate accommodation of religious observances over the institutional need to maintain good order, security, and discipline or to control costs." *Id.* (citing *Lovelace v. Lee*, 472 F.3d 174, 190 (4th Cir. 2006)). Prison officials may deny a kosher diet based on the compelling interests of maintaining good order and controlling costs. *Id.* Both of these interests are applicable here, and Newsome is not entitled to relief.

Further, Newsome has been transferred to SMCI. None of the named Defendants are SMCI officials and would not be capable of providing Newsome with kosher meals. With respect to Newsome's request for religious counseling and baptism, "the requirement of an outside volunteer d[oes] not place a substantial burden on the plaintiff's religious exercise under RLUIPA." *Id.* (citing *Adkins*, 393 F.3d at 571). The Defendants' unfamiliarity with Newsome's faith and subsequent request for an outside volunteer does not burden his freedom of religion. Therefore, Newsome has failed to establish a violation of RLUIPA or RFRA, and his claims concerning religious accommodations should be dismissed.

### D. Denial of Access to the Courts

Newsome next alleges that he was denied access to the courts because the law library was inadequate and his legal documents were confiscated or destroyed.

He did not exhaust his claim against Rogers, but McLeod did not include any arguments concerning exhaustion of this issue in her Motion for Summary Judgment.

Although prisoners have a constitutional right of access to the courts, that right does not "encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993). There is no "abstract, freestanding right to a law library or legal assistance." *Patterson v. Harris Cty. Jail*, 358 Fed. App'x 491, 492 (5th Cir. 2009) (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). "The right of access to the court is not unlimited, but 'encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims . . . .'" *United States v. Liedtke*, 107 Fed. App'x 416, 417 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999)).

"To establish that he has been denied access to the courts, [a plaintiff] must show actual prejudice in his ability to pursue a legal claim." *Lewis v. Smith*, 107 Fed. App'x 429, 429 (5th Cir. 2004) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). Newsome has filed numerous documents before this Court, presenting a coherent picture of his claims. He does not mention any other cases where he has been involved in any capacity. Because there is no actual prejudice, or even an allegation of prejudice, Newsome's claims of an inadequate law library and the confiscation or destruction of his legal documents are meritless.

To the extent Newsome is alleging a due process violation for the confiscation or destruction of his legal documents, "a deprivation of a constitutionally protected

property interest caused by a state employee's random unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the State fails to provide an adequate post deprivation remedy." *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004) (quoting *Zinermon v. Burch*, 494 U.S. 113, 115 (1990)). The doctrine applies to both negligent and intentional deprivation of property. *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986) (negligent deprivation); *Hudson v. Palmer*, 468 U.S. 517, 534-35 (1984) (intentional deprivation). The plaintiff has the burden of showing that the state's post-deprivation remedy is inadequate. *Hudson*, 468 U.S. at 535. However, Mississippi's post-deprivation remedies for civil litigants proceeding *in forma pauperis* are considered adequate. *Nickens v. Melton*, 38 F.3d 183, 185 (5th Cir. 1994). Therefore, Newsome has not alleged a viable due process claim.

### E. Retaliation

Finally, Newsome alleges that he was retaliated against for attempting to exercise his First Amendment rights and for attempting to use the prison grievance system. Newsome did not exhaust his retaliation claims against Fairley, Richard, and Rogers, and he did not exhaust his retaliatory transfer claim against McLeod. However, Newsome also argues that he was removed from educational and rehabilitative services while at George County. As McLeod is not a George County employee, it is unclear that she would have been able to deny him access to these services.

In any case, to prevail on a retaliation claim, "a prisoner must establish (1) a

specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (quoting *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). "Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Id.* at 686.

However, courts must regard retaliation claims with caution: "[t]he prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)). In order to ultimately prevail on this claim, Newsome must "be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred." *Id.* However, Newsome has provided no direct evidence of retaliation, nor has he "allege[d] a chronology of events from which retaliation may plausibly be inferred." *Id.* (quoting *Cain v. Lane*, 857 F.2d 1139, 1143 (7th Cir. 1988)). In fact, despite his numerous filings before this Court, Newsome has provided no more than a general and conclusory allegation of retaliation. The mere fact that supposed retaliation occurred around the time that Newsome was attempting to exercise his rights and utilize the prison grievance system is not enough to state a claim for retaliation. *Gonzales v. Sarabia*, 720 Fed. App'x 213, 214

(5th Cir. 2018) (citing *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808

(5th Cir. 2007)). Therefore, Newsome's retaliation claims must also fail.

## III. RECOMMENDATION

Based on the above analysis, the undersigned recommends that McLeod's

Motion for Summary Judgment (ECF No. 31) be granted; Fairley, Rogers, and

Richard's Motion for Summary Judgment (ECF No. 33) be granted in part and

denied in part; and Newsome's remaining claims be dismissed.

## IV. NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and
> recommendations, each party has fourteen days to serve
> and file written objections to the report and
> recommendations. A party must file objections with the
> clerk of court and serve them upon the other parties and
> submit them to the assigned district judge. Within seven
> days of service of the objection, the opposing party or
> parties must either serve and file a response or notify the
> district judge that they do not intend to respond to the
> objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and

recommendations to which he objects. The District Judge need not consider

frivolous, conclusive, or general objections. A party who fails to file written

objections to the proposed findings, conclusions, and recommendations within

fourteen days of being served a copy shall be barred, except upon grounds of plain

error, from attacking on appeal any proposed factual finding or legal conclusion

adopted by the Court to which he did not object. *Douglass v. United Servs. Auto.*

16

*Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED**, this the 28th day of January, 2019.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE