# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

ANTHONY MELVIN NEWSOME                                **PLAINTIFF**

v.                              **CIVIL ACTION NO. 1:17-CV-280-JCG**

BOBBY FAIRLEY, et al.                           **DEFENDANTS**

## <u>MEMORANDUM OPINION AND ORDER</u>

BEFORE THE COURT are the following Motions: a Motion for Summary Judgment (ECF No. 57) filed by Defendants Eugene Wigelsworth[1] and Gia McLeod, their Memorandum in Support (ECF No. 58), and Plaintiff Anthony Melvin Newsome's Response in Opposition (ECF No. 61); Defendant Eric Richard's Motion for Summary Judgment (ECF No. 62), his Memorandum in Support (ECF No. 63), Plaintiff's Response in Opposition (ECF No. 65), and Richard's Reply (ECF No. 68); Plaintiff's two Motions for Summary Judgment (ECF Nos. 64 & 78), his Memorandum in Support (ECF No. 66), Appendix (ECF No. 69), and Declaration (ECF No. 71); and Richard's Motions to Strike each of Plaintiff's Motions for Summary Judgment (ECF Nos. 67 & 79). Having considered the submissions of the parties and applicable law, the Court concludes that Wigelsworth and McLeod's Motion for Summary Judgment (ECF No. 57) should be granted; Richard's Motion for Summary Judgment (ECF No. 62) should be granted; Plaintiff's Motions for Summary Judgment (ECF Nos. 64 & 78) should be denied; and Richard's Motions to Strike (ECF Nos. 67 & 79) should be found as moot.

---

[1] Wigelsworth was originally identified as Wigglesworth.

## BACKGROUND

Plaintiff, who currently resides at the Bethel Encounters Retreat Center in Kiln, Mississippi, filed suit in the Greene County Circuit Court on August 30, 2017 (ECF No. 1-1). Defendants Bobby Fairley, Terry Rogers, and Richard removed the case to this Court on October 4, 2017 (ECF No. 1), and McLeod and Wigelsworth joined in the removal (ECF No. 3). Thereafter, on October 19, 2017, Plaintiff filed an Amended Complaint (ECF No. 5) against the five Defendants. His claims relate to events that allegedly occurred while he was housed at the George-Greene County Regional Correctional Facility (George County) in Lucedale, Mississippi.

Since that time, the Court has dismissed all of Plaintiff's claims against Fairley and Rogers; his retaliatory transfer claim against McLeod, and his retaliation claim against Richard. Therefore, Plaintiff's only remaining claims are an access to the courts and a retaliation claim against McLeod and a religious accommodation claim against Richard and Wigelsworth (ECF No. 48).

With respect to his access to the courts and retaliation claims, he seeks damages and injunctive relief against McLeod, the Inmate Legal Assistance Program (ILAP) Director for the MDOC. He contends that his right to access the courts was denied due to the inadequate law library and the confiscation, misappropriation, or destruction of his legal documents. At the omnibus hearing, he indicated that the substance of this claim was that Defendant Rogers, who was dismissed due to Plaintiff's failure to exhaust, would remove or destroy Plaintiff's grievance requests. According to Plaintiff, McLeod was Rogers' superior, and

Plaintiff sought McLeod's help in preventing the issue. Plaintiff stated that he is

suing McLeod because of the policies she implemented and the actions of her

subordinates (ECF No. 54 at 16-19 & 47). Additionally, he argued that his right to

access the courts was denied because ILAP did not have trained legal personnel

(ECF No. 54 at 22). He also contends that as a result of his attempts to exercise his

First Amendment rights and to utilize the prison grievance system, McLeod

retaliated against him by removing him from educational and rehabilitative

services at George County. However, he stated that his removal from these services

was a result of his transfer to a different facility. He contends the only reason the

transport officer gave him for the transfer was "ILAP" (ECF No. 54 at 20-21 & 56).

With respect to his religious accommodation claim, he seeks damages and

injunctive relief from Richard, the Chaplain at George County, and Wigelsworth,

the Chaplaincy Department Director for the Mississippi Department of Corrections

(MDOC). He claims he was denied religious accommodations in violation of the

First Amendment's Free Exercise Clause, the Religious Land Use and

Institutionalized Persons Act (RLUIPA), and the Religious Freedom Restoration Act

(RFRA). Plaintiff stated that he is a member of the Natsarim Faith and contends he

was denied a yeast free diet during Passover, the right of immersion baptism, and

religious counseling. At the omnibus hearing and in some filings, he contended he

needed a kosher tray or a no pork tray; however, he indicated he was receiving a no

pork tray, at least while at George County. He also argued that Defendants

required him to verify his religion.

At the omnibus hearing, the Court set July 9, 2019 as the deadline for dispositive motions (April 10, 2019 Text Only Order). Richard filed a Motion to Extend (ECF No. 56), and the Court extended the deadline until August 8, 2019 (July 10, 2019 Text Only Order). McLeod and Wigelsworth filed their Motion for Summary Judgment (ECF No. 57) on July 9, 2019. Richard filed his Motion for Summary Judgment (ECF No. 62) on August 8, 2019. Plaintiff's Motions for Summary Judgment (ECF Nos. 64 & 78) were not received until August 22, 2019 and December 2, 2019. His first Motion for Summary Judgment (ECF No. 64) is combined with his response (ECF No. 65) to Richard's Motion, and it is dated August 18, 2019, ten days after the expiration of the motion deadline. His second Motion for Summary Judgment (ECF No. 78) is a copy of his earlier filed Appendix (ECF No. 69).[2] The certificate of service is dated August 27, 2019, and the document itself is dated August 29, 2019. Richard has moved to strike (ECF Nos. 67 & 79) each motion as untimely. Plaintiff has not filed a response.

## DISCUSSION

Summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). A motion for summary judgment shall be granted "if the

---

[2] His second Motion for Summary Judgment is missing the seventh page of his earlier Appendix, which contains the following sentence: "[t]he Court refused to consider [Plaintiff's] evidence against [Defendants] Fairley, Richard[,] and Rogers relating to court access."

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) When evaluating a motion for summary judgment, the Court must construe "all facts and inferences in the light most favorable to the nonmoving party." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). If the movant carries this burden, the burden shifts to the non-moving party to show that summary judgment should not be granted. *Id.* at 323-24. "The non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005) (citing *Celotex*, 477 U.S. at 324). In the absence of any proof, the Court will not assume that the Plaintiff "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

I.  Access to the Courts Claim

Plaintiff's only remaining access to the courts claim is against McLeod, as he contends her subordinates prevented him from filing grievances, she implemented

such a policy, and ILAP did not have trained legal personnel. To the extent Plaintiff is arguing McLeod is liable for the actions of her subordinates, "[s]ection 1983 does not create supervisory or *respondeat superior* liability." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Therefore, this aspect of Plaintiff's claim must fail.

Additionally, Plaintiff has no constitutional right to the existence of a grievance procedure and no constitutional interest in having his grievance resolved to his satisfaction. *Guillory v. Hodge*, No. 2:14-cv-156-MTP, 2015 WL 1968636, at *1 (S.D. Miss. Apr. 30, 2015) (citing *Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005)); *see also Lijadu v. I.N.S.*, No. 06-0518, 2007 WL 837285, at *3 (W.D. La. Feb. 21, 2007) ("detainees 'do not have a constitutionally protected right to a grievance procedure'—much less one that complies with their own personal preferences"). "A prison official's refusal to entertain an inmate's grievance as it relates to a constitutional right does not compromise the inmate's right to petition the government for redress." *Buckley v. Pearsons*, No. 5:10-cv-17-DCB-RHW, 2011 WL 3022539, at *2 (S.D. Miss. May 25, 2011) (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Therefore, Plaintiff's claim regarding his grievances is without merit.

Next, the right of access to the courts does not "encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993). There is no "abstract, freestanding right to a law library or legal assistance." *Patterson v. Harris Cty. Jail*, 358 Fed. App'x 491, 492 (5th Cir. 2009) (quoting *Lewis v. Casey*, 518 U.S. 343, 351

(1996)). "The right of access to the court is not unlimited, but 'encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims . . . .'" *United States v. Liedtke*, 107 Fed. App'x 416, 417 (5th Cir. 2004) (quoting *Jonas v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999)).

Further, "[t]o establish that he has been denied access to the courts, [a plaintiff] must show actual prejudice in his ability to pursue a legal claim." *Lewis v. Smith*, 107 Fed. App'x 429, 429 (5th Cir. 2004) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). The only prejudice Plaintiff alleges is that some of his claims in the instant case were dismissed on exhaustion grounds because Rogers mishandled his grievances (ECF No. 54 at 51-52 & 54). However, as discussed above, the "mishandling of grievance processes by a prison official 'does not give rise to a First Amendment claim for denial of access to the courts.'" *Barela v. Underwood*, No. 3:18-cv-2353-G-BH, 2019 WL 4648262, at *7 (N.D. Tex. July 30, 2019) (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)). Additionally, the Court considered whether the administrative remedy program was unavailable to Plaintiff when deciding the prior motions, and it found that remedies were not unavailable (ECF Nos. 44 at 7 & 48 at 10). Therefore, Plaintiff's access to the courts claim must fail.

II.   Retaliation Claim

In his remaining retaliation claim, Plaintiff alleges that McLeod removed him from educational and rehabilitative services in retaliation for exercising his constitutional rights. However, his statements indicate he was removed from these programs because he was transferred to a different facility. Plaintiff's retaliatory

transfer claim against McLeod has already been dismissed due to his failure to exhaust (ECF No. 48 at 10-11).

To prevail on a retaliation claim, Plaintiff must "establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (quoting *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). "Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Id.* at 686.

However, courts must regard retaliation claims with caution: "[t]he prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in . . . penal institutions." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)). A prisoner's "personal belief that he was the victim of retaliation is not sufficient to support a retaliation claim." *Ybarra v. Meador*, 427 Fed. App'x 325, 326 (5th Cir. 2011) (citing *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997)). Finally, a plaintiff must "establish that but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods*, 60 F.3d at 1166. The mere fact that the supposed retaliation occurred around the time that Plaintiff attempted to utilize the prison grievance system is not enough. *Gonzales v. Sarabia*, 720 Fed. App'x 213,

214 (5th Cir. 2018) (citing *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007)).

Here, Plaintiff places significant emphasis on what he considers to be "smoking gun" evidence of retaliation. On August 3, 2017, McLeod emailed Pamela Robinson and Edia Coleman, both MDOC officials. Because George County did not have ILAP on site, and because Plaintiff "need[ed] immediate and continued ILAP access," McLeod asked if it would be possible to move Plaintiff to a facility that did have ILAP on site (ECF No. 78-2). As previously stated, Plaintiff's retaliatory transfer claim has already been dismissed, and this email does not speak to Plaintiff's removal from any services. Additionally, the Court finds that this letter does not demonstrate a retaliatory intent, as the focus is on providing Plaintiff with the ILAP services he desired. Finally, Plaintiff has offered no evidence to contradict McLeod's declaration that she does not have the authority to transfer inmates or remove inmates from services (ECF No. 57-1). Therefore, Plaintiff's retaliation claim cannot survive summary judgment.

III.    Religious Accommodation Claim

In his religious accommodations claims against Richard and Wigelsworth, Plaintiff seeks relief pursuant to the First Amendment's Free Exercise Clause, RLUIPA, and RFRA. His claims concern the provision of a yeast free or kosher diet, the denial of an immersion baptism and religious counseling, and being required to verify his religion.

A.  First Amendment

Although prisoners retain their right to the free exercise of religion while incarcerated, prison regulations and the actions of officials may sometimes encroach upon that right. Whether the encroachment is permissible depends on "whether it is 'reasonably related to legitimate penological interests.'" *Butts v. Martin*, 877 F.3d 571, 584 (5th Cir. 2017) (quoting *Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 607 (5th Cir. 2008)).

Courts must consider four factors in determining the reasonableness of an encroaching action: (1) is there a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;" (2) are there "alternative means of exercising the right that remain open to prison inmates;" (3) what "impact [the] accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and (4) are there "ready alternatives" to the regulation. *Turner v. Safley*, 482 U.S. 78, 89-90 (1987) (internal citations omitted). Ultimately, the central question in evaluating a First Amendment complaint is whether there is a "reasonable relation" between the action and the legitimate interest purportedly justifying it. *Beard v. Banks*, 548 U.S. 521, 533 (2006).

However, both Richard and Wigelsworth argue that they are entitled to qualified immunity on Plaintiff's free exercise claim. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights

10

of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Qualified immunity thus protects "all but the plainly incompetent or those who knowingly violate the law," and "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Accordingly, a government official is entitled to immunity from suit unless (1) a plaintiff has made allegations sufficient to show a violation of a constitutional right, and (2) the right at issue was "clearly established" at the time of the official's alleged misconduct. *Pearson*, 555 U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). These two prongs need not be addressed in a particular order, and failure to satisfy either may be dispositive. *Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 409 (5th Cir. 2009) (citing *Pearson*, 555 U.S. at 236). Once a defendant invokes qualified immunity as a defense, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

With respect to Plaintiff's claim that he needed a special diet, there is a "legitimate governmental interest in running a simplified prison food service." *Baranowski v. Hart*, 486 F.3d 112, 122 (5th Cir. 2007) (citing *Kahey v. Jones*, 836 F.2d 948, 950 (5th Cir. 1988)). Prisons "need not respond to particularized religious dietary requests to comply with the First Amendment." *Id.* Therefore, this first aspect of Plaintiff's claim must fail.

Although Plaintiff contends that he could baptize himself if provided with a tub of water, Richard's affidavit indicates that a spiritual leader must come to the facility to perform any rites for any particular religion (ECF No. 62-7). Plaintiff has not offered any evidence to show that this is not the prison's policy. Further, even after he was transferred, he was specifically told that MDOC policy requires someone with credentials to perform such a sacrament (ECF No. 64-2). The Fifth Circuit has upheld the requirement of an outside volunteer to perform a baptism or conduct other religious services. It found that staffing, space limitations, and financial burdens are legitimate penological interests; having an outside volunteer is a sufficient "alternative means" for conducting a baptism; yielding to the demands would have a "ripple effect;" and there are no "obvious, easy alternatives." *See Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 861-62 (5th Cir. 2004).

Further, with respect to both the immersion baptism and religious counseling claims, the uncontradicted evidence indicates that Elder Lew White was the only individual Plaintiff named when he was asked for Natsarim religious leaders, and White would not come to the prison. White also did not provide the names of any other individual who could have assisted Plaintiff, despite Richard's request for guidance on the religion (ECF No. 64-2). Richard and Wigelsworth sought more information from Plaintiff about the religion; however, Plaintiff only provided the websites for the Torah Institute and Fossilized Customs (ECF No. 54 at 60). Neither of these websites appears to provide readily available information on practicing the Natsarim faith; instead, they offer materials for sale (ECF No. 64-2 at 31). Although

12

Plaintiff contends that Richard has refused to meet with him, he describes one such meeting in his filings (ECF Nos. 61-1 at 3 & 64-2 at 19), but he complains it was not conducted in a private setting. At the omnibus hearing, he also indicated he had conversations with Richard (ECF No. 54 at 37). Further, Richard indicates in his affidavit that Plaintiff "had multiple opportunities to speak with [Richard] in person and receive counseling," but he "neglected to do so" (ECF No. 62-7 at 3). The record also indicates that Richard "sought to be available," but Plaintiff was not cooperative (ECF Nos. 62-2; 62-4; 62-11; 62-19; & 64-2). Given these circumstances, not allowing an immersion baptism or failing to provide the religious counseling Plaintiff sought is not a violation of a clearly established right.

Ultimately though, Plaintiff argues that Defendants were required "to coordinate, implement, and maintain a religious program specifically for [his] religious preference" (ECF Nos. 40 & 54 at 67). Because Defendants do not retain faith specific counselors for every religion, their refusal to provide Natsarim specific counseling or rites and instead request an outside volunteer does not violate Plaintiff's First Amendment rights. Such a practice is rationally related to a legitimate government interest of maintaining control and reducing expenditures and leaves open the alternative of outside volunteers and individual worship. *See Baranowski*, 486 F.3d at 121-22; *Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004). Therefore, this aspect of Plaintiff's First Amendment claim must also fail.

Finally, Plaintiff argues he was required to verify his religion. The alleged verification was actually the MDOC's change of religious membership record (ECF

13

No. 64-2 at 14). Plaintiff had previously been listed as a Christian in MDOC's

records (ECF No. 64-2 at 2, 5, & 7). After Plaintiff submitted the form, Defendants

attempted to find more information about his religion, as discussed above.

Recording Plaintiff's change of religion is a "legitimate and neutral" objective. *Butts*,

877 F.3d at 585 (quoting *Mayfield*, 529 F.3d at 607). The requirement of the change

of religious membership record did not encroach on Plaintiff's exercise of religion, as

it did not prevent him from engaging in any conduct mandated by his faith. *See*

*Pethe v. Henderson*, No. 4:06-cv-15-WAP-EMB, 2008 WL 4450297, at *3 (N.D. Miss.

Sept. 29, 2008). *See also Taylor v. Pelican Bay*, No. C 07-639-MHP, 2010 WL

2671989, at *7 (N.D. Cal. July 2, 2010); *Pogue v. Woodford*, No. S-05-1873-MCE-

GGH-P, 2009 WL 2777768, at *10 (E.D. Cal. Aug. 26, 2009).

### B. RLUIPA & RFRA

Although RFRA "has been declared unconstitutional as applied to the states,"

RLUIPA has taken its place and "applies a very similar test." *Thompson v. Scott*, 86

Fed. App'x 17, 18 (5th Cir. 2004) (citing *City of Boerne v. Flores*, 521 U.S. 507, 536

(1997)). Under RLUIPA, prison officials must "refrain from (1) substantially

burdening an inmate's free exercise of his religion unless, when strictly scrutinized,

(2) the burden 'is in furtherance of a compelling governmental interest' and 'is the

least restrictive means of furthering that compelling interest.'" *Sossamon v. Lone*

*Star State of Tex.*, 560 F.3d 316, 331 (5th Cir. 2009) (quoting 42 U.S.C. § 2000cc-1).

However, "RLUIPA does not create a private right of action against

individuals for damages." *Copeland v. Livingston*, 464 Fed. App'x 326, 330 (5th Cir.

14

2012). "Damages are also not available under RLUIPA against any defendants—as state actors—in their official capacities." *Walker v. Dir.*, No. 6:17-cv-380, 2018 WL 4574252, at *3 (E.D. Tex. Sept. 24, 2018) (citing *Sossaman v. Texas*, 563 U.S. 277, 280 (2011)). Further, because Plaintiff has been released from prison, his request for injunctive relief pursuant to RLUIPA is now moot. *See Edwards v. Johnson*, 209 F.3d 772, 776 (5th Cir. 2000) (citing *Pembroke v. Wood Cty.*, 981 F.2d 225, 228 (5th Cir. 1993); *Hernandez v. W.L. Garrison*, 916 F. 2d 291, 293 (5th Cir. 1990)). Therefore, all of Plaintiff's First Amendment and RLUIPA claims against Richard and Wigelsworth must fail.

IV.    <u>Plaintiff's Motions for Summary Judgment and Richard's Motions to Strike</u>

Although the Court has considered Plaintiff's arguments with respect to the claims discussed above, his Motions for Summary Judgment (ECF Nos. 64 & 78) and related filings (ECF Nos. 65, 66, 69, & 71) also raise arguments concerning claims that have previously been dismissed. The Court finds no reason to reconsider its prior decisions under Rule 54(b) of the Federal Rules of Civil Procedure. Therefore, Plaintiff's Motions for Summary Judgment (ECF Nos. 64 & 78) should be denied in those respects as well. Because the Court finds that Plaintiff's Motions for Summary Judgment should be denied, Richard's Motions to Strike (ECF Nos. 67 & 79) are rendered moot.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Wigelsworth and McLeod's Motion for Summary Judgment (ECF No. 57) is granted; Richard's Motion for Summary Judgment (ECF No. 62) is granted; Plaintiff's Motions for

Summary Judgment (ECF Nos. 64 & 78) are denied; and Richard's Motions to Strike (ECF Nos. 67 & 79) are rendered moot. All of Plaintiff's claims are dismissed. A separate final judgment will be entered as required by Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED,** this the 30th day of January, 2020

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE